**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **DAVID C. PAYTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN, acting** | ) | **Cause No. 1:13-cv-985-WTL-DKL** |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff David Payton requests judicial review of the final decision of Defendant Carolyn
W. Colvin, acting Commissioner of the Social Security Administration ("Commissioner"),
denying Mr. Payton's application for Disability Insurance Benefits ("DIB") under Title II of the
Social Security Act ("the Act"). The Court rules as follows.

## I.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by
reason of a medically determinable mental or physical impairment which can be expected to
result in death, or which has lasted or can be expected to last for a continuous period of at least
twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must
demonstrate that his physical or mental limitations prevent him from doing not only his previous
work, but any other kind of gainful employment which exists in the national economy,
considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step
sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is
not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step

two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## II.     <u>BACKGROUND</u>

Mr. Payton filed an application for DIB on September 11, 2010, alleging disability beginning April 15, 2009, due to heart problems, strokes, and diabetes. His date last insured was March 31, 2010. His application was initially denied on November 4, 2010, and again upon reconsideration on February 11, 2011. He requested and was granted a hearing before an Administrative Law Judge ("ALJ"). On March 1, 2012, Mr. Payton appeared with counsel and testified at an administrative hearing before ALJ Daniel J. Mages. ALJ Mages issued his decision denying Mr. Payton's application on March 26, 2012. On April 18, 2013, the Appeals Council denied review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review.

*Medical Evidence*

From January 2, 2007, to January 4, 2007, Mr. Payton was hospitalized for a primary diagnosis of a right thalamic ischemic infarct with resultant left arm and face numbness. His secondary diagnoses included uncontrolled diabetes, nicotine addiction, hypertension, hyperlipidemia, moderate coronary artery disease, and chronic renal insufficiency. He was advised to see his family doctor and endocrinologist, stop smoking, and do moderate exercise. R. at 408.

On May 13, 2008, Mr. Payton underwent a biopsy. *Id.* at 348. On May 27, 2008, Mr. Payton reported increased fatigue. It was noted that he played full racquetball and softball games. He did not report any lightheadedness or dizziness. *Id.* at 350.

On February 11, 2009, Mr. Payton reported having discomfort in his chest and epigastric area that was associated with left arm numbness. It was noted that he was an active person with no symptoms while playing racquetball, though his exercise tolerance had slightly decreased. *Id.* at 304. On August 19, 2009, Mr. Payton was seen following an episode of food poisoning. It

was noted that he was still recovering from the food poisoning, but otherwise was an active person with no chest pain. *Id.* at 360.

In May 2009, Mr. Payton was admitted to the hospital with unstable angina and non-ST-elevation myocardial infarction. On May 28, 2009, he underwent cardiac catheterization, which revealed left anterior descending disease and right coronary disease. He underwent stenting on the left side. *Id.* at 494-96. On August 24, 2009, Mr. Payton underwent an MRI which was abnormal and showed remote lacunar infarctions of the right thalamus and left anterior commissure. No acute infarctions were identified. There was a mild degree of ischemic vascular change. *Id.* at 389. On October 29, 2009, Mr. Payton reported increased fatigue, easy tiredness with low energy, some insomnia, and postural dizziness. *Id.* at 498.

On February 4, 2010, Mr. Payton saw Dr. Jo Mahenthiran. He noted that Mr. Payton played racquetball for two hours once or twice a week with no exertional worsening in chest pain or shortness of breath. He also noted that Mr. Payton had remained compliant with most of his medications. He told Mr. Payton that he needed to continue to work on lifestyle changes, including weight loss and exercise. He noted that his blood pressure control was inadequate. *Id.* at 293-94.

On September 2, 2010, Dr. Mahenthiran noted that Mr. Payton had good functional capacity and that he played softball and racquetball without any problems, although without the same strength that he previously had. He also noted that his blood pressure was uncontrolled. *Id.* at 281-82.

On November 4, 2010, Dr. Joseph N. Gaddy, a State Agency physician, did not complete the medical portion of the Residual Functional Capacity ("RFC") assessment due to insufficient evidence from April 15, 2009, to March 31, 2010. He noted that the medical evidence showed

heart problems, strokes, uncontrolled diabetes due to noncompliance, and stenting, but the medical evidence was insufficient to evaluate functional capacity prior to the date last insured. *Id.* at 390. Dr. Gaddy completed a Disability Determination and Transmittal form indicating that Mr. Payton did not meet or equal a listing. *Id.* at 57.

On February 10, 2011, Dr. Fernando R. Montoya, a State Agency doctor, completed a physical RFC assessment for April 15, 2009, to March 31, 2010. He noted that Mr. Payton could occasionally lift or carry fifty pounds, frequently left or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. He noted that Mr. Payton's fatigue was due to his low blood pressures from his medications, he improved with adjustments, and he was able to exercise regularly. *Id.* at 229-236. Dr. Montoya also completed a Disability Determination and Transmittal form indicating that Mr. Payton did not meet or equal a listing. *Id.* at 58.

On December 9, 2011, Dr. Saihari Sadanandan noted that Mr. Payton's main concern was difficulty with his memory and that he was being treated by a neurologist due to a history of a cerebrovascular accident in 2006. Dr. Sadanandan noted that Mr. Payton did not take a medication that his neurologist had prescribed. Dr. Sadanandan also noted that Mr. Payton's difficulty with his memory resulted in his decision to stop working as a minister. Dr. Sadanandan also noted that Mr. Payton's level of fatigue made it more difficult for him to play softball and racquetball. *Id.* at 455-58.

*Testimony Evidence*

At the hearing, Mr. Payton testified that he completed school through the tenth grade and later received a GED. He then received a degree in ministry, and worked as a minister beginning in 1990. He reduced his hours in April 2009 and quit work in June 2010. He said he quit

playing sports, and if he went out to golf, he would be lucky to play eight or nine holes using a golf cart. He testified that he was always tired and could not walk the length of a football field. He testified that he wore an insulin pump but sometimes forgot to take his insulin shots.

Gail Corn, a vocational expert ("VE"), testified that the Dictionary of Occupational Titles classified Mr. Payton's past work as a minister as light. The ALJ asked the VE to consider a hypothetical individual of the same age, education and work experience as the claimant who could perform a range of work with the following restrictions: sitting up to six hours during an eight hour workday; standing and walking up to six hours during an eight hour workday; lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; occasionally climbing ramps and stairs; balancing, stooping, kneeling, crouching, and crawling; but no climbing ladders, ropes or scaffolds; and no work around dangerous moving machinery or unprotected heights. The VE testified that such an individual could perform Mr. Payton's past work. The ALJ then asked the VE about a hypothetical individual who was limited to sitting four hours during an eight hour workday, and standing and walking four hours during an eight hour workday, with all other limitations the same. The VE said that such an individual would not be able to perform Mr. Payton's past work and would not have transferrable skills to any light jobs. The ALJ recognized that if he were to find the claimant restricted to sedentary work, the medical vocational grid rules would direct a conclusion of disabled.

### III.   DISCUSSION

In his brief in support of his request for judicial review, Mr. Payton presents three issues for the Court's review. First, he argues that the ALJ's decision failed at step three to adequately address his impairments under the Listings. Second, he argues that the ALJ's decision failed to articulate the function-by-function assessment of Mr. Payton's RFC and did not logically bridge

the evidence to the decision's conclusion.  Third, he argues that the ALJ did not consider his

mental impairments.

## A.  The ALJ's Step Three Determination

Mr. Payton argues that the ALJ erred in his discussion of Mr. Payton's impairments

because the ALJ discussed Listings 4.04, 6.02, and those related to diabetes, but his "discussion

merely consists of statements that the evidence fails to document evidence necessary to meet or

medically equal the listings." Pl.'s Br. at 8.  Mr. Payton also argues that the ALJ erred because

he failed to have a medical expert testify at the hearing.

Mr. Payton does not point to any evidence to show that he does meet Listings 4.04, 6.02,

or those related to diabetes.  "The claimant bears the burden of proving his condition meets or

equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  Instead, Mr.

Payton relies on the argument that the ALJ failed to have a medical expert testify about whether

his impairments equal a Listing.  The Seventh Circuit has noted that the ALJ need not summon a

medical expert to testify at the hearing if a medical expert has signed the Disability

Determination and Transmittal forms ("the Forms") that address medical equivalency. *See*

*Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989) (noting that the requirements were satisfied

with regard to medical equivalency because two physicians signed the Forms and substantial

evidence in the record supported the ALJ's determination that the claimant did not medically

equal a listing); *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that

consideration by a physician . . . designated by the Commissioner has been given to the question

of medical equivalence at the initial and reconsideration levels of administrative review. The

ALJ may properly rely upon the opinion of these medical experts.") (internal citations and

quotation marks omitted).  In this case, both Drs. Gaddy and Montoya completed the Forms and

concluded that Mr. Payton did not meet or medically equal a Listing.  In the absence of any evidence to the contrary, there is no error with the ALJ's determination with respect to step three.

## B.  Erroneous RFC

Mr. Payton argues that the ALJ failed to complete "[t]he mandated function-by-function assessment, along with the necessary reasoning behind such an assessment." Pl.'s Br. at 12.  The Court disagrees.

The ALJ discussed how his RFC determination accounted for Mr. Payton's specific impairments.  The ALJ limited Mr. Payton to performing only light exertional level work where he could sit up to six hours during an eight-hour workday; stand and walk up to six hours during an eight-hour workday; and lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently.  He noted that he limited Mr. Payton in these ways because of his mild residual coronary artery disease with history of myocardial infarctions, hypertension, obesity, and diabetes.  The ALJ further limited his exertional level by determining that Mr. Payton could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Finally, the ALJ considered Mr. Payton's alleged lower extremity symptoms and his history of dizziness related to his hypertension when he determined that Mr. Payton could not climb ladders, ropes, or scaffolds, or work around dangerous moving machinery or unprotected heights. R. at 27-8.

Further, Mr. Payton does not allege any specific errors in the ALJ's determination but merely argues that "[t]he decision to deny benefits does not rest on sound reasoning or substantial evidence." Pl.'s Br. at 13.  This general and vague argument is not enough to warrant remand.  *See, e.g., United States v. Tockes*, 530 F. 3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived.").

## C. Erroneous Assessment of Mental Impairments

Mr. Payton argues that the ALJ erroneously failed to acknowledge his mental limitations. He argues that he was not seen by a mental specialist or given a memory test. He also assigns error to the fact that a Mental RFC assessment and a Psychiatric Review Technique form were not completed.

Mr. Payton did not claim any mental limitations as impairments. "An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Mr. Payton did not allege in his initial application that he had mental impairments. In his September 22, 2010, disability report, he did not note any mental conditions that limited his ability to work, R. at 180, and he reported that he had never seen a doctor or received treatment for any mental conditions. *Id.* at 183. In his January 6, 2011, disability report, Mr. Payton said that since he last completed a disability report, he has seen or would see a doctor for emotional or mental problems that limited his ability to work. *Id.* at 191. However, the record does not show any such treatment. The medical evidence that the ALJ received about Mr. Payton's mental limitations, such as his memory loss and vascular dementia, is dated after Mr. Payton's date last insured. Regardless, the ALJ did consider the evidence he received about Mr. Payton's mental limitations when he noted that following his stroke, "the sparse primary treating source notes document some complaints of ongoing memory impairment, [but] these records fail to document clinical findings of significant cognitive deficits or memory impairment." *Id.* at 23. Further, the other mental limitations that Mr. Payton argues that the ALJ failed to consider – sleep apnea, his cerebrovascular accident, and his history of lacunar infarcts – are all physical, not mental, impairments. *See* 20 C.F.R. pt.

404, subpt. P, App. 1. Accordingly, the ALJ did not err in his consideration of Mr. Payton's mental impairments before the date last insured.

## IV.     CONCLUSION

In this case, the ALJ satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 07/18/2014

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.